UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE RYVYL INC. DERIVATIVE LITIGATION,<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No.: 3:23-cv-1165-GPC-SBC<br><br>**ORDER:**<br><br>**GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>**[ECF Nos. 26, 28]** |

Before the Court is the Parties' joint motion for final approval of the parties' derivative settlement agreement, ECF No. 26, and Plaintiffs' unopposed motion for an order approving an award of attorneys' fees and expenses, ECF No. 28. On January 9, 2026, the Court held a final settlement hearing on this matter. ECF No. 30. For the reasons detailed below, the Court **GRANTS** both motions.

## BACKGROUND

### I. Factual Allegations

This is a shareholder derivative action on behalf of nominal defendant RYVYL, Inc.

1

("RYVYL" or "the Company") against current and former RYVYL directors and officers (the "Individual Defendants,"[1] and together with RYVYL, the "Defendants"). RYVYL is a financial technology company "centered on disrupting the payments industry by offering multiple blockchain encoded payment processing solutions for individuals and businesses." ECF No. 1, at 2-3. Plaintiffs allege that the Individual Defendants failed to implement adequate internal controls to prevent materially false and misleading financial information from being published by RYVYL. ECF No. 26-1, at 8-9. Plaintiffs further allege that controlling RYVYL shareholders participated in a scheme to cause RYVYL to overpay for repurchases of its own stock while the stock price was artificially inflated due to the alleged false and misleading statements, resulting in alleged violations of §§ 10(b), 14(a), and 20 of the Exchange Act and violations of state law, including breach of the fiduciary duties owed to RYVYL. *Id.*

**II. Procedural Background**

On February 1, 2023, a putative class action lawsuit titled *Cullen v. RYVYL Inc. fka GreenBox POS, Inc., et al.*, Case No. 3:23-cv-00185-GPC-AGS (the "Securities Class Action"), was filed in this Court against several defendants, including RYVYL and certain of its current and former directors and officers, alleging substantially similar facts as those alleged in this derivative litigation. *See* ECF No. 18, at 3-4. The parties in the Securities Class Action executed a stipulation and agreement of settlement on July 9, 2025. *Id.* The Court held a final fairness hearing on the class action settlement on December 19, 2025, after which the Court granted final approval of the class action settlement and directed the clerk to close the case. *See Cullen v. RYVYL Inc. fka GreenBox POS, Inc., et al.*, No. 3:23-CV-00185-GPC-SBC, 2025 WL 3731036 (S.D. Cal. Dec. 19, 2025).

On June 22, 2023, the first of two shareholder derivative actions in this Court—*Christy Hertel, derivatively on behalf of RYVYL Inc., f/k/a GreenBox POS v. Ben Errez et*

---

[1] The Individual Defendants are Ben Errez, Fredi Nisan, Benjamin Chung, Genevieve Baer, William Caragol, Ezra Laniado, and Dennis James. ECF No. 1, at 2.

*al.*, Case No. 3:23-CV-01165-GPC-SBC—was filed against RYVYL's current and former officers and directors. ECF No. 18, at 4-5. On August 4, 2023, the second shareholder derivative action—*Marcus Gazaway, derivatively on behalf of RYVYL Inc., f/k/a GreenBox POS v. Ben Errez et al.*, Case No. 3:23-CV-01425-LAB-BLM—was filed in this Court against the same Defendants. ECF No. 18, at 4-5. Both derivative actions make the same allegations against Defendants and seek damages and contribution from Defendants, as well as actions to reform and improve corporate governance and internal procedures to ensure compliance with applicable laws. *Id*. The Defendants deny all allegations of wrongdoing or liability asserted in the shareholder derivative actions. *Id.* at 5.

On March 18, 2024, the Parties to these two derivative actions jointly moved to consolidate their cases. ECF No. 10. On April 2, 2024, the Court granted the Parties' joint motion and consolidated the actions under the caption *In re RYVYL Inc. Derivative Litigation*, case number 3:23-cv-01165-GPC-SBC. ECF No. 11. The Court subsequently appointed The Brown Law Firm, P.C., as lead counsel for Plaintiffs in the derivative lawsuits before this Court. ECF No. 15.

On May 1, 2024, a third, substantially similar shareholder derivative complaint was filed in Clark County, Nevada, by Plaintiff Christina Brown. ECF No. 18, at 5. The two derivative actions consolidated before this Court, along with the Nevada State Action, are collectively referred to in this order and in the Stipulation of Settlement as the "Derivative Lawsuits." *See* ECF No. 18, at 5; ECF No. 27-1, at 7 n.1.

On May 8, 2025, all parties in the Derivative Lawsuits reached an agreement in principle to fully resolve and settle all claims alleged in the Derivative Lawsuits, subject to approval by this Court. ECF No. 18, at 5. All parties executed a Stipulation of Settlement on September 30, 2025, ECF No. 18, and moved for the Court's preliminary approval of the settlement on October 7, 2025. ECF No. 19.

After a hearing on November 14, 2025, the Court granted provisional approval of the derivative action settlement and conditionally approved the proposed form and manner of notice. ECF No. 23.

### III. Settlement Agreement

The summarized key terms of the Stipulation and Agreement of Settlement (the "Stipulation"), ECF. No. 18, are as follows:

#### A. Terms

RYVYL will adopt the corporate governance reforms set forth in Exhibit A of the Stipulation, ECF No. 18-1, and keep them in place for at least three years. ECF No. 18, at 15. These reforms include, but are not limited to:

1. Establishing a Risk & Disclosure Committee;
2. Expanding the Board of Directors to add an additional independent director;
3. Improving RYVYL's Related Party Transactions Policy;
4. Expanding and documenting the duties of the Company's new Vice President, Legal;
5. Enhancing RYVYL's internal controls and compliance function, the Board's oversight of stock repurchases, and RYVYL's whistleblower policy;
6. Improving the charters for the Audit Committee, Nominating Committee, and Compensation Committee; and
7. Providing for improved employee training in risk assessment and compliance.

*See* ECF No. 18-1, at 2-4.

#### B. Releases

Per the Stipulation, the Released Claims shall be finally and fully compromised, settled, and released, and the Derivative Lawsuits shall be dismissed with prejudice as against all Released Persons. ECF No. 18, at 8-9.

The "Released Claims" include all claims or causes of action including, but not limited to:

[A]ny claims for damages, injunctive relief, interest, attorneys'

fees, expert, or consulting fees, and any and all other costs, expenses, sums of money, or liabilities whatsoever, against any of the Released Persons that: (i) were asserted or could have been asserted derivatively in the Derivative Lawsuits; (ii) would have been barred by res judicata had the Derivative Lawsuits been fully litigated to final judgment; (iii) that have been, could have been, or could in the future be, asserted derivatively in any forum or proceeding or otherwise against any of the Released Persons that concern, are based upon, involve, or arise out of, or relate to any of the subject matters, allegations, transactions, facts, events, occurrences, disclosures, representations, statements, omissions alleged, acts, failures to act, alleged mismanagement, misconduct, concealment, alleged misrepresentations, alleged violations of local, state or federal law, sale of stock, or other matters involved, set forth, or referred to, or could have been alleged in or encompassed by, the complaints in the Derivative Lawsuits; or (iv) arise out of, relate to, or concern the defense, settlement, or resolution of the Derivative Lawsuits or the Released Claims.

ECF No. 18, at 12-13.

The Released Claims do not include claims to enforce the terms of the Stipulation nor exclusively direct claims absent RYVYL stockholders may have in an individual capacity against Defendants. *Id.* at 13.

The Released Persons include Defendants' Counsel and each of the Defendants and their respective past, present, or future heirs, trusts, trustees, estates, beneficiaries, and other entities with whom they have legally binding relationships of duties. *Id.* at 13.

Defendants also release all claims arising out of the commencement, litigation, or settlement of the Derivate Lawsuits as against Plaintiffs, Plaintiffs' Counsel, and any past, present, or future entities with whom they have legally binding relationships or duties. *Id.* at 9-10, 20-21.

Lastly, should the Court approve the Settlement, the parties in the Nevada State Action will file a notice of voluntary dismissal with prejudice and/or a stipulation of voluntary dismissal with prejudice in that action. *Id.* at 20.

**C. Attorneys' Fees and Expenses**

Plaintiffs' counsel seeks—and Defendants have agreed to pay—$200,000 in attorneys' fees and costs, which is comprised of $25,000 in cash and Settlement Shares worth $175,000 (the "Fee and Expense Amount"). ECF No. 18, at 16-17.

Plaintiffs' counsel also request a service award of $500 for each of the three named Plaintiffs in the three Derivative Lawsuits. ECF No. 18, at 19-20. These awards will be drawn from the funds allocated for Plaintiffs' attorneys' fees and expenses. *Id.*

**D. Notice**

RYVYL provided notice of the Settlement consistent with the proposed notice plan preliminarily approved in the Courts preliminary approval order. *See* ECF No. 25. Specifically, RYVYL: (1) posted a link to the Notice, ECF No. 18-3, and the Stipulation and Agreement of Settlement, ECF No. 18, on the Investor Relations page of its website; (2) issued a press release describing the Form 8-K, the Preliminary Approval Order, the Notice, and the Stipulation on GlobeNewswire; and (3) filed the Preliminary Approval Order, the Stipulation, the Notice, and the press release with the U.S. Securities and Exchange Commission as exhibits to a Form 8-K. ECF No. 25, at 2.

## DISCUSSION

**I. Motion for Final Approval**

**A. Legal Standard**

A derivative action may be settled only with the court's approval. Fed. R. Civ. P. 23.1(c). "In determining whether to approve the settlement of a derivative action, courts look to cases and standards under Rule 23(e) of the Federal Rules of Civil Procedure for guidance by analogy." *In re CPI Aerostructures S'holder Derivative Litig.*, No. 20-cv-2092, 2023 WL 2969279, at *3 (E.D.N.Y. Feb. 14, 2023); *see also In re OSI Sys., Inc. Derivative Litig.*, No. CV-14-2910-MWF, 2017 WL 5634607, at *1 (C.D. Cal. Jan. 24, 2017) (When reviewing a derivative action settlement for approval, "[t]he Court takes as instructive case law governing preliminary approval of class action settlements under Rule 23(e)").

"Rule 23 requires courts to employ a two-step process in evaluating a class action or

derivative action settlement." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 516 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021). First, the court "must make a preliminary determination that the settlement is 'fair, reasonable, and adequate'" under Rule 23(e)(2). *Id.* at 517 (quoting Fed. R. Civ. P. 23(e)(2)). "Second, if the court preliminarily approves a derivative action settlement, notice 'must be given to shareholders or members in the manner that the court orders.'" *Hu v. Baker*, No. 4:23-CV-02077-KAW, 2025 WL 2419265, at *5 (N.D. Cal. Aug. 21, 2025) (quoting Fed. R. Civ. P. 23.1(c)). The court then holds a hearing to "make a final determination whether the settlement is 'fair, reasonable, and adequate.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(2)).

When considering a derivative action settlement, courts evaluate fairness, reasonableness, and adequacy by considering a range of factors, such as "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation . . . the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel[.]" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). However, the principal factor that courts consider is "the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *In re Pinterest Derivative Litig.*, No. C 20-08331-WHA, 2022 WL 484961, *3 (N.D. Cal. Feb. 16, 2022) (quoting *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, at *2 (N.D. Cal. Nov. 5, 2008)).

A court must further ensure that the proposed settlement is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *In re Hewlett-Packard*, No. 3:12-CV-06003-CRB, 2015 WL 1153864, at *3 (N.D. Cal. Mar. 13, 2015) (quoting *In re NVIDIA Corp. Derivative Litig.,* No. C–06–06110–SBA, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008)). "The reaction of shareholders also factors into assessing the fairness of a settlement." *In re Pinterest Derivative Litig.*, No. C 20-08331-WHA, 2022 WL 2079712, at *1 (N.D. Cal. June 9, 2022).

**B. Adequacy of Notice**

Rule 23.1(c) requires that notice of the Settlement "must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). Notice to shareholders "must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Lloyd v. Gupta*, No. 15-CV-04183-MEJ, 2016 WL 3951652, at *6 (N.D. Cal. July 22, 2016) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). In determining whether the proposed notice method is adequate, "the Court considers whether such notice would be sufficient to reach the majority of interested stockholders." *Bushansky v. Armacost*, No. 12–CV–01597–JST, 2014 WL 2905143, at *6 (N.D. Cal. June 25, 2014) (citing 7C Wright & Miller's Federal Practice & Procedure § 1839 (3d. ed.)).

The Court previously approved the Parties' notice plan. ECF No. 23, at 13-16. After approval, counsel submitted a declaration and documentation demonstrating their implementation of that plan. ECF No. 25. On November 21, 2025, RYVYL (1) posted a link to the Notice, ECF No. 18-3, and the Stipulation and Agreement of Settlement, ECF No. 18, on the Investor Relations page of its website; (2) issued a press release describing the Form 8-K, the Preliminary Approval Order, the Notice, and the Stipulation on GlobeNewswire; and (3) filed the Preliminary Approval Order, the Stipulation, the Notice, and the press release with the U.S. Securities and Exchange Commission as exhibits to a Form 8-K. ECF No. 25, at 2.

The deadline for shareholders to submit objections to the Settlement was December 26, 2025. Despite the robust notice program approved by this Court, no shareholder submitted an objection to the Settlement. *See* ECF No. 29, at 3.

Given these efforts, the Court concludes that the notice provided by the parties has satisfied Rule 23.1 and due process. *See*, *e.g.*, *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d at 517-18; *Bushansky*, 2014 WL 2905143, at *6 (collecting cases).

**C. Fairness, Adequacy, and Reasonableness of Settlement**

In its Preliminary Order, the Court analyzed several factors and found the Settlement

to be fair, adequate, and reasonable. ECF No. 23, at 8-13. The Court has no reason to alter its determination now that shareholders have received notice, had an opportunity to file objections, and declined to do so. Thus, the analysis herein will be substantially like the analysis contained within the Preliminary Approval Order. ECF No. 23.

### 1. Benefits to RYVYL

The Parties assert that the Settlement will provide RYVYL with "the benefits of a comprehensive set of policy, governance, internal controls, and oversight enhancements designed to address the specific alleged policy, decision-making, and oversight lapses that are alleged to have resulted in legal and financial exposure." ECF No. 26-1, at 15. The parties maintain that the Settlement will "provide real, substantial, and long-lasting benefits for RYVYL and its shareholders." *Id*.

"[A] corporation may receive a 'substantial benefit' from a derivative suit . . . regardless of whether the benefit is pecuniary in nature." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970); *see also In re Ceradyne, Inc.*, No. SACV 06-919-JVS (PJWx), 2009 WL 10671494, at *2 (C.D. Cal. June 9, 2009) ("Non-pecuniary benefits to the corporation have been deemed adequate consideration for the settlement of derivative suits . . . [and] can be particularly valuable when the relief is intended to prevent future harm" (internal quotation marks and citations omitted)). "Courts have recognized that corporate governance reforms . . . provide valuable benefits to public companies." *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *3 (quoting *Cohn v. Nelson,* 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005)).

When evaluating the adequacy of nonmonetary settlement provisions like corporate governance reforms, courts examine whether a company is already undertaking the provisions independently of the settlement. If the reforms proposed in the settlement were already implemented or going to be implemented by the company, then courts are more doubtful of the value of the settlement. *See In re Lyft, Inc. Derivative Litig.*, No. 20-CV-09257-HSG, 2024 WL 4505474, at *4 (N.D. Cal. Oct. 16, 2024) ("[T]he Court is skeptical that the reforms presented here are a benefit *of the settlement* rather than [the company's]

own independent actions.") (emphasis in original); *In re Pinterest Derivative Litig.*, No. C 20-08331-WHA, 2022 WL 2079712, at *3 (N.D. Cal. June 9, 2022) (critical of the fact that "a fair number of the reforms were already in place as a result of the corporation's own actions addressing the [underlying action's allegations]").

Courts are more likely to deem corporate governance reforms beneficial to a company in a derivative action settlement when the reforms directly address alleged corporate misconduct. *See Moore v. Verb Tech. Co., Inc.*, No. CV 19-8393-GW-MAAx, 2021 WL 11732976, at *4 (C.D. Cal. Mar. 1, 2021) (finding that "corporate governance measures that specifically address the allegations in the derivative action" substantially benefit the company by helping prevent it from making additional misleading statements about its business); *In re Taronis Techs., Inc. S'holder Derivative Litig.*, No. CV-19-04547-PHX-GMS, 2021 WL 842137 (D. Ariz. Mar. 5, 2021) (finding that corporate governance changes conferred sufficient benefit to company because they addressed compliance with public reporting requirements that the company had allegedly not complied with).

The Court agrees with the Parties that the corporate governance reforms listed in Exhibit A of the Stipulation benefit RYVYL. Though non-pecuniary, the reforms directly address the alleged deficiencies listed in Plaintiffs' Derivative Lawsuits. For example, the reforms require the establishment of a Risk & Disclosure Committee, provide for an updated and expanded Insider Trading Policy, ensure related party transactions are fair and fully disclosed by improving and clarifying the Related Party Transactions Policy, and expand objective oversight by the Board of Directors by adding an independent director and broadening the Board's oversight of stock repurchases. ECF No. 26-1, at 16; *see generally* ECF No. 18-1. These directly respond to the Derivative Lawsuits' allegations that the Individual Defendants (1) caused RVVYL to make a series of false statements to the investing public and (2) caused RYVYL to overpay for repurchases of its own stock while the price was artificially inflated due to the alleged false statements. ECF No. 26-1, at 8-9.

The reforms further mandate that RYVYL establish and maintain training programs

1  that include "coverage of risk assessment and compliance, RYVYL's Code of Ethics, Related Party Transactions Policy, Clawback Policy . . . Whistleblower Policy . . . and all other manuals or policies established by RYVYL concerning legal or ethical standards of conduct." ECF No. 18-1, at 11. These trainings will be mandatory for all directors, officers, and employees and will occur on an annual basis. *Id.* at 10. The Court finds that this proposed training program is substantial, directly addresses the alleged corporate misconduct, and would provide a considerable benefit to RYVYL.

The reforms' benefits are bolstered by the fact that RYVYL will implement and maintain the reforms for three years following the effective date of the settlement. ECF No. 18-1, at 4. This multi-year implementation period will be beneficial to the company. *See Chenoy v. Lyft, Inc.*, No. 20-CV-09257-HSG, 2025 WL 948065, at *5 (N.D. Cal. Mar. 28, 2025) ("Because the Settlement Agreement fixes these reforms in place for a three-year period, the reforms may well engender some lasting trust in [the company's] safety and corporate governance, yielding financial benefits for [the company]").

The Court does note that among the listed reforms is the "expan[sion] and document[ation] of the duties" of a new Vice President Legal. ECF No. 19-1, at 7. The VP Legal has already been hired by RYVYL, and the Reforms note that the VP Legal may already be tasked with several of the responsibilities outlined therein. *See* ECF No. 18-2, at 6. Thus, this element of the Reforms would not persuade the court of the value of the settlement. *See, e.g.*, *In re Pinterest Derivative Litig.*, No. C 20-08331-WHA, 2022 WL 2079712, at *3 (N.D. Cal. June 9, 2022) (critical of the fact that "a fair number of the reforms were already in place as a result of the corporation's own actions addressing the [underlying action's allegations]"). However, the additional Reforms are sufficiently novel and beneficial to RYVYL that, overall, the Court finds that the Settlement is in RYVYL's best interest. Thus, the benefits to RYVYL—the most important factor in evaluating the fairness of a derivative action settlement—weigh in favor of approving the Settlement. *See In re Pinterest Derivative Litig.*, 2022 WL 484961, *3.

**2. Non-Collusive, Arm's-Length Negotiations**

The Parties assert that the Settlement "is the result of several months of arm's-length negotiations among experienced, well-informed counsel following their substantial investigation of the claims, defenses, and remedial measures." ECF No. 26-1, at 12.

In evaluating the fairness of a derivative action settlement, courts must ensure that a settlement agreement "is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *In re Hewlett-Packard*, 2015 WL 1153864, at *3 (quoting *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *2). An agreement reached in good faith after well-informed, arms-length negotiation is "entitled to a presumption of fairness." *In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10–06352 MMM (JCGX), 2014 WL 10212865, at *8 (C.D. Cal. July 28, 2014). Indeed, the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

The Court finds the Parties' negotiation process to be fair. Parties were represented by counsel who understood the strengths and weaknesses of the claims and defenses in the Derivative Lawsuits. ECF No. 26-1, at 12-13. Indeed, Plaintiffs' counsel conducted extensive investigation and analysis of the underlying facts, including, among other things, (1) reviewing and analyzing all RYVYL press releases, public statements, and SEC filings; (2) reviewing and analyzing securities analysts' reports about RYVYL; (3) reviewing and analyzing the pleadings in the Securities Class Action; (4) researching the applicable law with respect to the claims alleged and the potential defenses; (5) researching RYVYL's corporate governance structure; and (6) preparing multiple versions of comprehensive written settlement demands. ECF No. 18, at 7. The settlement negotiations also occurred over the course of several months. *Id.*, at 6.

The Court also finds the Parties' negotiations to be non-collusive. Plaintiffs' and Defendants' counsel negotiated over a prolonged period, and only after the Parties reached an agreement in principle on the material terms of the settlement did the Parties engage in separate negotiations regarding attorneys' fees. ECF No. 18, at 6, ECF No. 19-1, at 18. This favors a finding of no collusion. *See Moore v. Verb Tech. Co., Inc.*, 2021 WL

11732976, at *5 (finding "no signs of collusion" because "[t]he parties did not begin to negotiate the attorneys' fees and expenses to be paid to Plaintiff's Counsel until after they reached an agreement on the [corporate governance reforms].").

Further, while the parties did not utilize the services of a mediator in finalizing the Settlement now before the Court, the Court notes that defense counsel representing RYVYL in this derivative settlement also did so in the related Securities Class Action settlement approved by this Court on December 19, 2025. *See Cullen v. RYVYL Inc. fka GreenBox POS, Inc., et al.*, No. 3:23-CV-00185-GPC-SBC, 2025 WL 3731036 (S.D. Cal. Dec. 19, 2025). As part of the class action settlement process, the parties engaged in extensive negotiations overseen by a professional mediator. *Id.* at *6. Such arm's-length negotiations further assure the Court that that the Settlement now before it was negotiated fairly and in good faith.

The Court finds that the Settlement is the result of a substantive, non-collusive negotiation process. Thus, this factor weighs in favor of finding that the Settlement is fair, reasonable, and adequate.

### 3. Risks and Costs of Further Litigation

The Parties emphasize that the settlement eliminates the risks and costs of ongoing litigation, particularly given the risk of no recovery after years of litigation. ECF No. 26-2, at 19.

When considering a derivative settlement, a court "must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiffs' case), with the benefits afforded . . . and the immediacy and certainty of a substantial recovery." *Velazquez v. Int'l Marine & Indus. Applicators, LLC*, No. 16CV494-MMA (NLS), 2018 WL 828199, at *4 (S.D. Cal. Feb. 9, 2018). Further, "[c]ourts agree that derivative actions are particularly complex and 'rarely successful.'" *Arnaud van der Gracht de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach*, No. SACV1800236AGJCGX, 2019 WL 7753447, at *4 (C.D. Cal. Jan. 7, 2019) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). "The doctrine of demand futility, the business judgment rule, and the

generally uncertain prospect of establishing a breach of fiduciary duties combine to make shareholder derivative suits an infamously uphill battle for plaintiffs." *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 281–82 (S.D.N.Y. 2015).

Regardless of their merit, Plaintiffs' claims would be difficult and costly to sustain if this litigation were to proceed. "From the outset, Plaintiffs faced risks that the Derivative Lawsuits might not have withstood challenges at the pleading stage, especially given Rule 23.1's heightened standards for pleading demand futility and demand refusal." ECF No. 26-1, at 17 (internal quotation marks and citation omitted). Further, the Parties agree that, if Plaintiffs succeeded at the pleading stage, they "would have faced the high costs associated with lengthy and complex litigation, including voluminous discovery and depositions." *Id.* (internal quotation marks and citation omitted); *see also Auerbach*, 2019 WL 7753447, at *4 (approving derivative action settlement in part by noting the potential cost of discovery where biotech drug company was sued over allegedly false and misleading statements about drug product's safety and efficacy). These high risks and costs contrast with the settlement's certainty and immediacy. In short, "[a] number of risks are posed by continued litigation, while settlement assures broad corporate reform." *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d at 282.

Accordingly, the substantial risks of prolonged and costly litigation weigh in favor of approval of the Settlement.

### 4. Reaction of Shareholders

The deadline for shareholders to submit objections to the Settlement was December 26, 2025. *See* ECF No. 23, at 19. No shareholder objected. *See* ECF No. 29, at 3. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *see also Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper). "Courts reviewing settlements

of shareholder derivative suits have applied the same presumption." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d at 518 (citing *In re Ceradyne, Inc.*, No. SA-CV-06-919-JVS-PJWX, 2009 WL 10671494, at *5 (C.D. Cal. June 9, 2009)). Indeed, "[t]hat presumption is further enhanced where 'not one sophisticated institutional investor objected to the Proposed Settlement.'" *Id.* (quoting *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018)).

Accordingly, the shareholders' reaction to the settlement—as evidenced by the lack of objections raised—further supports a finding that the Settlement is fair, reasonable, and adequate.

In sum, given the Settlement's benefits to RYVYL, the Parties' non-collusive negotiation, the uncertainty and potentially high cost of further litigation, and the reaction of the shareholders, the Court finds the Settlement to be fair, reasonable, and adequate, and GRANTS final approval of the Settlement.

## II. Plaintiffs' Unopposed Motion for Attorneys' Fees and Service Awards

Together with its motion for final approval, Plaintiffs' counsel has filed an unopposed motion for an order approving the award of attorneys' fees and expenses outlined in the Settlement. ECF No. 28.

### A. Plaintiffs' Counsel's Fees and Expenses

Plaintiffs may be awarded attorneys' fees in derivative suits if the resolution of the claim confers a "substantial benefit" on the corporation. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-95 (1970). "Courts have consistently approved attorneys' fees and expenses in shareholder actions where the plaintiffs' efforts resulted in corporate governance reforms but no monetary relief." *In re Taronis Techs., Inc. S'holder Derivative Litig.*, No. CV-19-04547-PHX-GMS, 2021 WL 842137, at *3 (D. Ariz. Mar. 5, 2021) (citing *In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009)).

In determining the appropriate measure of attorney's fees, the court must exercise its discretion to achieve a "reasonable result." *In re Bluetooth Headset Prods. Liab. Litig.*,

15

3:23-cv-1165-GPC-SBC

654 F.3d 935, 942 (9th Cir. 2011). The lodestar method of awarding attorneys' fees "is especially appropriate . . . 'where the relief sought—and obtained—is . . . primarily injunctive.'" *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 941 (9th Cir. 2011)); *see also Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 307 (D.D.C. 1996) ("Courts generally regard the lodestar method, which uses the number of hours reasonably expended, as the best approach in cases where the nature of the settlement evades the precise evaluation needed for the percentage of recovery method." (internal quotation marks and citation omitted)). The lodestar amount is determined by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).

In this case, the Parties have agreed on an attorneys' fees and expenses award of $200,000, which is comprised of $25,000 in cash and $175,000 in Settlement Shares (together, the "Fee and Expense Amount"). ECF No. 18, at 16-17. The term Settlement Shares refers to the number of freely tradable shares of RYVYL common stock equal to $175,000 in value based on the average daily adjusted closing price (as determined by Bloomberg) over the ten trading days preceding the date of the Court's final approval of the Settlement. ECF No. 27, at 9 n.4. The award in this case will be allocated between Plaintiffs' counsel in all three of the Derivative Lawsuits, including the consolidated derivative actions before this Court, as well as the Nevada State Action.

At the preliminary approval hearing, the Court instructed Plaintiffs' counsel to provide the Court with an account of hours billed in this case to aid the Court in its consideration of the reasonableness of the $200,000 award. Counsel has done so through declarations from Timothy Brown—managing partner of The Brown Law Firm P.C. and Co-Lead Counsel in the consolidated shareholder derivative action before this Court, ECF No. 28-2—and Timothy J. Macfall—a partner at Rigrodsky Law, P.A. and Plaintiff's counsel of record in the Nevada State Action, ECF No. 28-4.

The lodestar figure from the Brown Law Fim, P.C. is $199,262.50 for 232.1 hours of work, along with expenses totaling $5,396.29. ECF No. 27, ¶¶ 52, 54. Hourly rates

ranged from $375 for law clerks to $1,075 for the managing partner. *Id.* ¶ 52. Costs included court fees, legal research, mileage reimbursement, service of process, transcript fees, and travel. *Id.* ¶ 54. The lodestar figure for counsel in the Nevada State Action—Rigrodsky Law, P.A.—is $103,210.00 for 129.75 hours of work, along with $1,958.90 in expenses. ECF No. 27-3, ¶¶ 7, 9. Hourly rates ranged from $200 for a paralegal to $1,000 for a partner. *Id.* ¶ 7. Costs included court filing fees and online legal research. *Id.* ¶ 9. Thus, the total lodestar figure for hours worked is $302,472.50, and the total expenses are $7,355.19.

As an initial matter, the Court finds that the costs incurred in pursuing this action—totaling $7,355.19—were justifiably incurred in procurement of the settlement and typical for similar litigation. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (approving counsel's request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees").

The Court will now turn its attention to the fee award. If the Court were to grant the agreed-upon $200,000 award, the net attorneys' fees award—after subtracting costs and service awards—would be $191,144.81. ECF No. 27, ¶ 49. This figure represents 63 percent of the total lodestar calculation, or a negative multiplier of 0.63. A lodestar "multiplier of less than one . . . suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class." *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (requested fee award was not unreasonable when lodestar cross-check revealed a multiplier of 0.59); *see also See Mobile Emergency Hous. Corp. v. HP Inc.*, No. 5:20-CV-09157-SVK, 2025 WL 844412, at *2 (N.D. Cal. Mar. 18, 2025) ("Moreover, the negative lodestar multiplier demonstrates the reasonableness of the requested attorneys' fees.").

Further, the award in this case was the product of negotiations between experienced counsel that occurred only after the Parties reached an agreement in principle on the

material terms of the Settlement. "[G]reat, and potentially dispositive, weight should be given to a fee amount not to be paid from a common fund negotiated at arm's length between sophisticated counsel after the substantive terms of a settlement have been agreed." *Allred on behalf of Aclaris Therapeutics, Inc. v. Walker*, No. 19-CV-10641 (LJL), 2021 WL 5847405, at *5 (S.D.N.Y. Dec. 9, 2021); *see also In re OSI Sys., Inc. Derivative Litig.*, No. CV-14-2910-MWF-MRWX, 2017 WL 5642304, at *5 (C.D. Cal. May 2, 2017) ("The parties' separately-negotiated attorneys' fees arrangement warrants significant deference.").

Lastly, the Notice of Settlement distributed after preliminary approval apprised shareholders of the terms of the Settlement, including the agreed-upon $200,000 award of attorneys' fees and expenses. ECF No. 27, ¶ 10. Yet, no shareholder objected to the proposed award. *See* ECF No. 29, at 3. "As with the Settlement itself, the lack of objections from institutional investors 'who presumably had the means, the motive, and the sophistication to raise objections' weighs in favor of approval of the fee request." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 533 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) (quoting *In re Bisys Sec. Litig.*, No. 04-CV-3840-JSR, 2007 WL 2049726, at *1 (S.D.N.Y. July 16, 2007)).

Considering (1) the negative multiplier, (2) the lack of objections, (3) the fact that the fee award will not be taken from a common fund, and (4) the fact that the award was negotiated by experienced counsel only after reaching an agreement on the terms of Settlement, the Court finds the agreed-upon attorneys' fee award to be reasonable.

**B. Shareholders' Service Awards**

The Parties have also agreed that Plaintiffs' counsel may apply to the Court for service awards of up to $500 for each named Plaintiff. The awards are to be paid from the Fee and Expense Amount in recognition of Plaintiffs' participation and effort in the prosecution of the Derivative Lawsuits. ECF No. 18, at 19-20. Plaintiffs' counsel now seeks approval of $500 service awards for each of the three Plaintiffs in the Derivative Lawsuits.

"Derivative plaintiffs may . . . merit compensation for work done on behalf of the [shareholders]." *Chenoy v. Lyft, Inc.*, No. 20-CV-09257-HSG, 2025 WL 948065, at *7 (N.D. Cal. Mar. 28, 2025) (quoting *In re Wells Fargo & Co. Sharehold Derivative Litig.*, 2019 WL 13020734, at *8) (alterations in original). "An incentive payment to come from the attorneys' fees awarded to plaintiff's counsel need not be subject to intensive scrutiny, as the interests of the corporation, the public, and the defendants are not directly affected." *In re OSI Sys., Inc. Derivative Lit.*, 2017 WL 5642304, at *5.

Here, each Plaintiff filed a separate derivative action which was then consolidated into the present litigation or included within the present Settlement negotiations. As such, the shareholder Plaintiffs actively participated in the litigation and undertook certain responsibilities and risks that accompany publicly litigating such a suit. Further, the service award amount of $500 is well below the "presumptively reasonable" amount of $5,000 for such awards. *In re Wells Fargo & Co. Sharehold Derivative Litig.*, 445 F. Supp. 3d at 534 (citing cases). Accordingly, the Court concludes that the requested service awards are reasonable and approves the payment of a $500 service award to each of the three named Plaintiffs.

Because the requested attorneys' fees and expenses, as well as the service awards, are reasonable, the Court approves the agreed-upon fee and expense award of $200,000, including a total of $1,500 in service awards for the three named shareholder Plaintiffs.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the joint motion for final approval of the Settlement, ECF No. 26. The settlement shall be consummated in accordance with its terms, and the Court shall retain jurisdiction as described therein. ECF No. 18 at 25.

The Court also **GRANTS** Plaintiffs' unopposed motion for approval of the award of attorneys' fees, expenses, and service awards. ECF No. 28. The Court awards Plaintiffs' counsel a total of $200,000 in costs and fees—to be comprised of $25,000 in cash and $175,000 in Settlement Shares—which includes an approved service award of $500 to each of the three named Plaintiffs.

**IT IS SO ORDERED.**

Dated: January 13, 2026

Hon. Gonzalo P. Curiel
United States District Judge